IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT WILSON ADCOCK, | ) | Civil Action No. 7:14cv00137 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LAWRENCE WANG, | ) | By: Norman K. Moon |
|     Defendant. | ) | United States District Judge |

Robert Wilson Adcock, a Virginia inmate proceeding *pro se*, filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Lawrence Wang failed to adequately treat Adcock's gastro-intestinal issues at Green Rock Correctional Center ("Green Rock"), in violation of the Eighth Amendment of the United States Constitution. Presently before me is Dr. Wang's motion for summary judgment. Adcock has filed a response to the motion, and this matter is ripe for disposition. Upon consideration of this action, I conclude that Dr. Wang's motion for summary judgment should be granted.

I.

Dr. Wang met with Adcock on January 9, 2013, in response to Adcock's complaints of rectal bleeding and mucus in his stools. Dr. Wang examined Adcock, noting that Adcock had mild abdominal tenderness and had a history of colitis. Consequently, Dr. Wang believed Adcock needed to be rectally scoped and completed the paperwork to facilitate that exam.

Pursuant to Dr. Wang's request, Adcock met with a gastroenterologist at a private clinic on January 24, 2013. The outside consultation resulted in recommendations for two stool samples, prescriptions for sulfasalazine and folic acid, and a follow-up visit in two weeks. Due to security concerns, Adcock did not learn of the recommendation to have a follow-up visit in two weeks.

A nurse read the recommendations from the consultation to Dr. Wang, and Dr. Wang gave a verbal order to adopt the recommendations in total. When Dr. Wang reviewed the consultation note the following day, he did not realize that medical staff did not note the follow-up appointment in the chart and was not aware that a follow-up appointment was not being made.

Adcock received and took the ordered medications at Green Rock, but his symptoms worsened. Nearly two months later, Adcock submitted a sick call request, and two days later, Dr. Wang met with Adcock on March 13, 2013. Adcock explained that "the medication was not working" and his symptoms were worsening. Dr. Wang examined Adcock's abdomen, noting it was negative for masses or tenderness. Adcock told Dr. Wang that suppositories he had taken in the past had helped his symptoms, so Dr. Wang ordered a prescription for mesalamine suppositories twice a day for two months. Adcock alleges that, at this time, Dr. Wang discontinued the medications the consulting physician ordered, but the medical record does not reflect any such change in the orders for those medications. By May 2, 2013, Dr. Wang had not heard complaints from Adcock about the effectiveness of the mesalamine suppositories and, thus, ordered six months of suppositories so Adcock could continue taking them.

Adcock alleges that his symptoms worsened between March and July 2013, and on July 3, 2013, Adcock asked to see Dr. Wang. Dr. Wang met Adcock on July 11, 2013, and Adcock explained that his symptoms included, *inter alia*, ten to fifteen bowel movements per day and thirty pounds' weight loss in three months. Dr. Wang examined Adcock's abdomen, noting positive bowel sounds and no rebound tenderness. Although Dr. Wang did not feel that the

2

Case 7:14-cv-00137-NKM-RSB   Document 36   Filed 03/10/15   Page 2 of 7   Pageid#: 313

sulfasalazine was working, he continued the medication and ordered Adcock another appointment with the private clinic.

Six months after the initial consultation in January 2013, Adcock returned to the private gastroenterology center on July 29, 2013, for the follow-up visit. The private physician noted that Adcock had missed a previously scheduled follow-up visit, which was news to Adcock because, as a prisoner, he is not allowed to know of medical transportation dates. The private physician also noted that Adcock would be scheduled to have two procedures to diagnose his gastro-intestinal issues.

On August 28, 2013, Adcock underwent an upper gastro-intestinal endoscopy and colonoscopy at the private clinic, and the results indicated that Adcock suffered from ulcerative colitis and mild atrial gastritis. As a result of these diagnoses, the private physician recommended that Adcock continue to take sulfasalazine and folic acid, modified the mesalamine to be delivered via an enema instead of suppositories, and added omeprazole. Dr. Wang approved and ordered the recommendations to be implemented. Adcock returned to the private clinic on September 12 and October 3, 2013. On September 13, 2013, Dr. Wang ordered that "therapeutic fibers" (Metamucil and Boost) be added to Adcock's treatments.

In October 2013, Dr. Wang determined that the medication regimen was not improving Adcock's symptoms and ordered that Adcock receive more specialized care at the gastro-intestinal clinic at a hospital in Richmond. On December 6, 2013, Adcock was transferred from Green Rock to Greensville Correctional Center to facilitate easier transportation to that hospital, where Adcock would go for all future treatments and consultations. Ultimately, hospital staff removed six polyps from Adcock's colon, and his symptoms improved.

3

Adcock complains that he suffered between January and August 2013 before he received the true diagnoses of his gastro-intestinal issues. Adcock alleges that he did not receive the sulfasalazine and folic acid, which was ordered in January 2013 after the initial consultation, between March 11 and September 10, 2013, but the medical record reveals both Dr. Wang's orders for those medications remained in effect throughout that time and that Adcock received them, albeit under different trade names for the same medicines. Dr. Wang acknowledges that medical staff did not schedule Adcock for the two-week follow-up appointment after the January 2013 consultation, but Dr. Wang explains that he is not responsible for arranging a follow-up consultation and does not make a separate order for follow-up consultations after issuing the order to follow the recommendations from the consultation. Dr. Wang further explains that medical staff usually arrange for all follow-up appointments without his further involvement.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine

4

issue of fact for trial.[1] *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## III.

Adcock alleges that Dr. Wang failed to properly manage the treatment of Adcock's gastro-intestinal issues when he failed to schedule a follow-up appointment or ensure Adcock received the proper treatments, in violation of the Eighth Amendment of the United States Constitution. I conclude that Dr. Wang was not deliberately indifferent to Adcock's gastro-intestinal issues, and accordingly, I will grant Dr. Wang's motion for summary judgment.

To succeed on his Eighth Amendment claim about medical care, Adcock must sufficiently demonstrate that Dr. Wang was deliberately indifferent to a serious medical need.[2] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference means a state actor was personally aware of facts indicating a substantial risk of serious harm and actually recognized the existence of such a risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Estelle*, 429 U.S. at 104. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see Parrish ex rel. Lee v. Cleveland*, 372

---

[1] A plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

[2] Adcock's gastro-intestinal issues constitute a "serious medical need." *See, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (defining a "serious medical need" as, *inter alia*, "one that has been diagnosed by a physician as mandating treatment").

5

F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier*, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. *Id.* at 851.

There is no evidence that Dr. Wang recklessly disregarded an apparent substantial risk of harm. Dr. Wang reviewed Adcock's medical record, repeatedly examined Adcock, repeatedly referred Adcock to consultations with other physicians, repeatedly reviewed the consultation reports, and made medical decisions about the efficacies of various treatments. Adcock's disagreement with Dr. Wang's professional determination to use various varieties or formularies of the same medication does not state claim for relief under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Dr. Wang's treatment of Adcock does not shock the conscience and was not intolerable to fundamental fairness. In fact, the record shows that Dr. Wang actively treated Adcock's condition in response to Adcock's request for medical services. Adcock has not established that Dr. Wang is responsible for the supervision of nurses or administrative medical staff who administered medications or neglected to schedule the follow-up appointment to the January 24, 2013, consultation. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989). Adcock's disagreement with Dr. Wang's diagnosis and treatment of Adcock's gastro-intestinal issues, even if they were, *arguendo*, negligent, does not entitle Adcock to relief under

6

§ 1983. *Johnson v. Quinones*, 145 F.3d 164, 168-69 (4th Cir. 1998) (citing *Estelle*, 429 U.S. at 106).

I conclude that no dispute of material fact exists and that the record as a whole could not lead a rational trier of fact to find in favor of Adcock because the record does not indicate that Dr. Wang recognized a substantial risk of harm or recklessly disregard an apparent substantial risk of harm while Adcock was under his care at Green Rock or that Dr. Wang's treatment shocks the conscience or was intolerable to fundamental fairness. Accordingly, I conclude that Dr. Wang is entitled to summary judgment.[3]

**ENTER**: This  10th   day of March, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[3] Because of the defense of qualified immunity, Dr. Wang's motion for a protective is order will be granted. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).

7

Case 7:14-cv-00137-NKM-RSB   Document 36   Filed 03/10/15   Page 7 of 7   Pageid#: 318